O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MASS APPEAL MEDIA, INC., a Delaware corporation, | ) ) | Case No. CV 13-03258 DDP (AGRx) |
| | ) ) | **ORDER DENYING DEFENDANT'S MOTION** |
| Plaintiff, | ) ) | **TO DISMISS AND DENYING** |
| | ) ) | **PLAINTIFF'S MOTION FOR A** |
| v. | ) ) | **PERMANENT INJUNCTION** |
| | ) ) | |
| DAVINA DOUTHARD, INC., a California corporation, | ) ) | [DKT Nos. 21, 23] |
| | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

        Presently before the court are Defendant Davina Douthard,
Inc.'s Motion to Dismiss under Rule 12(b)(6) and Plaintiff Mass
Appeal Media, Inc.'s Motion for a Permanent Injunction. Having
considered the parties' submissions and heard oral argument, the
court now adopts the following order.

**I.    Background**

        This case concerns disputed use in commerce of the mark MASS
APPEAL. Both Plaintiff Mass Appeal Media, Inc. ("MAM") and Davina
Douthard, Inc. ("DDI") assert that they possess rights vis-a-vis
the mark.

///

1    MAM asserts that it owns a U.S. trademark for MASS APPEAL with

2    registration No. 2925206 in Class 16, which concerns paper goods

3    and printed material products. (FAC ¶ 5.) It also asserts that it

4    has submitted various pending U.S. trademark applications and has

5    acquired state common law rights to use the mark.[1] MAM asserts

6    that it has been using the MASS APPEAL mark in a variety of

7    activities since the 1990s. (Id. ¶ 10.) These activities include,

8    since 1998, online and print publications; on-line retail store

9    services for clothing, books, music recordings, and other items;

10   on-line music reviews; and presentation of information related to

11   live events; since 2003, a website allowing users to download music

12   and music videos; and, since 2012, the sale of clothing and

13   provides other various marketing and promotional services. (Id. ¶

14   6.)

15       MAM asserts that "Defendant [DDI] has marketed and sold online

16   publications and sent out emails using the name 'MASS APPEAL' and

17   unlawfully and wrongfully obtained its own U.S. Trademark

18   Registration for MASS APPEAL in its own name." (Id. ¶ 13.)

19       As Plaintiff acknowledges, DDI was issued a trademark for use

20   of the MASS APPEAL mark. (Id.) The court takes judicial notice of a

21   registration issued by the United States Patent and Trademark

22   Office to DDI for the word mark MASS APPEAL on April 18, 2006.[2]

23   _____

24       [1] According to MAM, these include No. 85945470 for the mark
     MASS APPEAL in classes 35, 41, and 42; No. 85674621 for the mark
25   MASS APPEAL in class 16; and No. 8574328 for the mark MASS APPEAL
     in classes 25, 35, and 41. (FAC ¶ 5.)

26       [2] "Although, as a general rule, a district court may not
27   consider materials not originally included in the pleadings in
     deciding a Rule 12 motion, Fed.R.Civ.P. 12(d), it 'may take
28   judicial notice of matters of public record' and consider them
                                              (continued...)

1 (See DDI's Request for Judicial Notice, Ex. A.) The registration is

2 for Class 41, which concerns education and entertainment services.

3 (Id.) The goods and services identified in the registration are

4 "[p]roviding on-line non-downloadable publications in the nature of

5 newsletters in the field of fashion, beauty, health, entertainment,

6 lifestyle, and other topics of general interest, directed to women

7 and men." (Id.)

8      However, MAM asserts that DDI "unlawfully and wrongfully"

9 obtained the registration. (FAC ¶ 13, 16.) MAM asserts that DDI

10 "knew of [MAM's use of the] MASS APPEAL Marks and that the same

11 were owned by someone other than themselves; [and] knew that the

12 MASS APPEAL Marks were distinctive and knew that Defendant had not

13 received any authority from [MAM] to use the MASS APPEAL Marks."

14 (Id. ¶ 16.) MAM further asserts that DDI abandoned use of the MASS

15 APPEAL mark in 2007 and only made de minimis token use beginning

16 again in October 2012 for the purpose of protecting the mark. (Id.

17 ¶ 17.)

18      MAM asserts that DDI's use of the mark is likely to cause

19 confusion among consumers who would erroneously believe that DDI's

20 allegedly unauthorized use is licenced or authorized by MAM. (Id. ¶

21 19.) MAM asserts causes of action for federal trademark

22 infringement under 15 U.S.C. § 1114, federal unfair competition

23 under 15 U.S.C. § 1125(a), trademark infringement under California

24

25

26      ²(...continued)
27 without converting a Rule 12 motion into one for summary judgment."
United States v. 14.02 Acres of Land More or Less in Fresno Cnty.,
28 547 F.3d 943, 955 (9th Cir.2008) (citing Lee v. City of Los
Angeles, 250 F.3d 668, 688 (9th Cir.2001)).

1  common law, and unfair competition under Cal. Bus. & Prof. Code §§
2  17200, <u>et seq.</u> and 17500. (<u>Id.</u> ¶ 20-58.)

3      MAM has filed a petition to cancel DDI's trademark before the
4  Trademark Trial and Appeal Board (TTAB). (MAM's RJN, Ex. B;
5  Cancellation No. 92057034.) However, in August 2013, the TTAB
6  suspended its proceedings on the petition in light of the instant
7  suit. (<u>Id.</u> at 9.)

8

9  **II.  Legal Standard**

10      A complaint will survive a motion to dismiss when it contains
11  "sufficient factual matter, accepted as true, to state a claim to
12  relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S.
13  662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting <u>Bell Atl.</u>
14  <u>Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d
15  929 (2007)). When considering a Rule 12(b)(6) motion, a court must
16  "accept as true all allegations of material fact and must construe
17  those facts in the light most favorable to the plaintiff." <u>Resnick</u>
18  <u>v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint
19  need not include "detailed factual allegations," it must offer
20  "more than an unadorned, the-defendant-unlawfully-harmed-me
21  accusation." <u>Iqbal</u>, 556 U.S. at 678. Conclusory allegations or
22  allegations that are no more than a statement of a legal conclusion
23  "are not entitled to the assumption of truth." <u>Id.</u> at 679. In other
24  words, a pleading that merely offers "labels and conclusions," a
25  "formulaic recitation of the elements," or "naked assertions" will
26  not be sufficient to state a claim upon which relief can be
27  granted. <u>Id.</u> at 678 (citations and internal quotation marks
28  omitted).

1   "When there are well-pleaded factual allegations, a court
2   should assume their veracity and then determine whether they
3   plausibly give rise to an entitlement of relief." Id. at 679.
4   Plaintiffs must allege "plausible grounds to infer" that their
5   claims rise "above the speculative level." Twombly, 550 U.S. at
6   555. "Determining whether a complaint states a plausible claim for
7   relief" is a "context-specific task that requires the reviewing
8   court to draw on its judicial experience and common sense." Iqbal,
9   556 U.S. at 679.
10
11  **III. Discussion**
12  **A.   DDI's Motion to Dismiss**
13      DDI moves to dismiss each of the causes of action asserted by
14  MAM. The court considers each in turn.
15  **I.   Federal Trademark Infringement Claim**
16      DDI argues that MAM's asserted cause of action for federal
17  trademark infringement should be dismissed because the USPTO
18  rejected MAM's application for the MASS APPEAL mark for Class 41 in
19  light of DDI's registered mark for the same class. (MTD at 5.) DDI
20  asserts that the USPTO's decision demonstrates the validity of its
21  mark and negates MAM's right to the mark, precluding any basis for
22  a trademark infringement action. (Id. at 6.)
23      The court takes judicial notice that in a document dated
24  February 7, 2013, the USPTO refused MAM's request to register the
25  mark MASS APPEAL for certain Class 41 goods "because of a
26  likelihood of confusion with the mark in the U.S. Registration Nos.
27  2925206 and 3083175." (DDI's RJN, Ex. D.) The court further takes
28  notice that, according to a USPTO document supplied by DDI,

5

Registration No. 2925206 was issued to Davina Douthard, Inc on April 18, 2006. (DDI's RJN, Ex. A.) Citing 15 U.S.C. § 1115(1), DDI asserts that its existing registration constitutes prima facie evidence of the validity of its registered mark and its limited property right to exclude others from using the mark. (MTD at 6.)

MAM argues that the USPTO's decision in this matter does not require dismissal of its federal trademark infringement claim. (Opp. at 4.) The court agrees. As MAM points out, although 15 U.S.C. § 1115 provides that a registration constitutes prima facie evidence of the validity and the exclusive right to use a trademark, the same statute makes clear that the existence of a registration "shall not preclude another person from proving any legal or equitable defense or defect," including fraudulent acquisition or abandonment. 15 U.S.C. § 1115(1)(a)-(b). MAM has challenged MAM's ownership of the trademark as invalid because it was fraudulently obtained and abandoned, both in the present action as well as in the now-stayed cancellation preceding before the TTAB. (Opp. at 3-4; TTAB Cancellation No. 92057034.) Were this court to find, as MAM urges, that MAM's common law rights are senior to DDI's rights in the MASS APPEAL mark as to internet use or that DDI does not have valid ownership rights in the mark because it was fraudulently obtained or abandoned, the February 7, 2013 USPTO rejection of MAM's application as to rights in Class 41 would not serve as an obstacle to MAM's infringement claim. See Optimal Pets, Inc. v. Nutri-Vet, LLC, 877 F. Supp. 2d 953, 959 (C.D. Cal. 2012) (summarizing state of law on common law trademark rights). Because MAM has adequately pled facts that could plausibly

result in such findings, the court denies DDI's motion to dismiss
as to the federal trademark infringement claim.

**ii.   Federal Unfair Competition Claim**

DDI next argues that MAM's federal unfair competition claim
should be dismissed because DDI's mark is protected under the
doctrine of incontestability pursuant to 15 U.S.C. § 1065. (MTD at
7.)

Under 15 U.S.C. § 1065, a trademark may be declared
incontestable after five years of consecutive use from the date of
the mark's registration. To become incontestable, the owner of the
mark must demonstrate that (1) there has been no final decision
adverse to the owner's claim of ownership, (2) there are no pending
claims involving the alleged right before a court or the USPTO, (3)
it has filed an affidavit within one year of the five-year period
stating that the mark has been in continuous use for the period,
and (4) the mark is not and has not become generic. 15 U.S.C. §
1065(1)-(4). Once the right to use the registered mark has become
incontestable under section 1065, the registration is conclusive
evidence of the validity of the registered mark, the registration
of the mark, the registrant's ownership of the mark, and the
registrant's exclusive right to use the registered mark in
commerce. 15 U.S.C.A. § 1115(b).

DDI asserts that these conditions obtain. It asserts that its
Class 41 MASS APPEAL mark was registered April 18, 2006 and that no
claims were made against the mark prior to the expiration of the
five year period following the registration, ending April 19, 2011.
(MTD at 7.) It further assets that it submitted a Section 8

7

1  Declaration of Use declaring its continued usage of the mark on

2  October 15, 2012. (MTD at 8; MAM's RJD, Ex. A.)

3      DDI's assertion that the incontestability doctrine bars the

4  unfair competition and other claims is unavailing. First, 15 U.S.C.

5  § 1065 makes clear that a mark does not become incontestable if the

6  mark "infringes a valid right acquired under the law of any State

7  or Territory by use of a mark or trade name continuing from a date

8  prior to the date of registration." 15 U.S.C. § 1065. If MAM can

9  show that DDI's registered mark infringes MAM's pre-existing common

10  law rights to the mark for use in the relevant class, as it alleges

11  in this action, the doctrine of incontestability would not apply.

12      Second, 15 U.S.C § 1115(b) provides for certain defenses to

13  incontestability, which include that the registration was obtained

14  fraudulently and that the mark has been abandoned by the

15  registrant. 15 U.S.C § 1115(b)(1)-(2). As discussed, MAM makes both

16  assertions in the instant action.

17      Third, it appears that the affidavit asserting continuous use

18  filed by DDI was untimely for the purposes of establishing

19  incontestability. The affidavit must be filed between the fifth and

20  sixth anniversaries of the registration of the mark. 15 U.S.C §

21  1065(3). Here, the relevant period was between April 19, 2011 and

22  April 19, 2012. Yet, by its own admission, DDI did not file its

23  affidavit until October 15, 2012, nearly six months late. (MTD at

24  8.)

25      For these reasons, the incontestability provisions of 15

26  U.S.C. § 1065 do not shield DDI from the federal unfair competition

27  claim or any other claim in the instant action.

28  **iii. California Trademark Infringement**

1    DDI appears to argue that DDI's ownership of the MASS APPEAL
2    mark with Registration No. 3083175 precludes MAM's California
3    trademark infringement cause of action because it establishes that
4    MAM does not own the registered mark. (MTD at 8-9.) DDI asserts
5    that "[t]he registration of the Defendant's mark prevents Plaintiff
6    from claiming ownership of 'Mass Appeal' for on-line purposes."
7    (MTD at 9.)

8    DDI's argument is unavailing. "Under the Lanham Act,
9    registration of a trademark creates a rebuttable presumption that
10   the mark is valid, but the presumption evaporates as soon as
11   evidence of invalidity is presented." Hokto Kinoko Co. v. Concord
12   Farms, Inc., 810 F. Supp. 2d 1013, 1022 (C.D. Cal. 2011) (citing
13   15 U.S.C. § 1051 et seq.). Here, as discussed above, MAM has
14   alleged that DDI's ownership in the mark is invalid due to
15   fraudulent acquisition and abandonment. (FAC ¶¶ 13-17.) As
16   discussed, these are recognized bases on which the presumed
17   validity of DDI's marks may be rebutted. Accordingly, the court
18   will not dismiss the California trademark infringement claim, or
19   any of the other claims, on the ground that DDI was issued
20   trademark Registration No. 3083175.

21   **iv. California Unfair Competition Claim**

22   DDI challenges MAM's California Unfair Competition Claim on
23   the ground that MAM has failed to identify any statement that
24   "misrepresents Plaintiff" or "exceeds the scope of Defendant's
25   registered mark." (MTD at 10.) This challenge is unsuccessful.
26   California's Unlawful Competition statute prohibits "unlawful,"
27   "unfair," or "fraudulent" business practices. Cal. Bus. & Prof Code
28   § 17200. Because section 17200 permits violations of other laws to

be treated as unfair competition, <u>see</u> <u>Kasky v.. Nike, Inc.</u>, 27
Cal.4th 939, 949 (2002), a plaintiff who states a claim for federal
or state trademark infringement states a claim under section 17200.
As discussed, MAM has asserted valid claims for both federal and
state trademark infringement, thereby enabling its section 17200
claim.  DDI additionally asserts that MAM's allegations that DDI
has marketed and sold online publications and emails using the name
MASS APPEAL, which MAM asserts infringed its common law rights, are
vague and indefinite. (MTD at 10.) The court finds, however, that
while MAM's factual allegations are thin, they state plausible
claims and are sufficient to give DDI notice of these claims. DDI
has made no arguments in the present motion to dismiss that would
require dismissal of the claims.

**v.  DDI's Assertion that MAM Conceded Lack of Ownership**

DDI asserts that MAM has effectively conceded lack of
ownership of the MASS APPEAL mark as to activities covered by Class
41. (<u>See</u> <u>id.</u> at 11.) DDI's arguments are not set out clearly so it
is difficult for the court to address them. DDI appears to argue
that differing first use dates asserted on MAM's applications for
registration of the MASS APPEAL mark on dates in 2012 and 2013
undermine MAM's claim to senior rights in the marks. (<u>Id.</u>) The
court takes judicial notice that MAM filed an application for a
character mark for MASS APPEAL for Class 41 for e-zines on October
2, 2012, with an asserted first use on March 15, 2012 (DDI's RJN,
Ex. C); and that MAM filed an application for MASS APPEAL for Class
41 for "on-line reviews of music" on May 29, 2013, with an asserted
first use on December 31, 1998 (<u>Id.</u>, Ex. F.) The court does not see
any inconsistency in the applications because the applications seek

1   registration for differing uses of the mark within Class 41. Nor do

2   the applications contradict MAM's other asserted uses of MASS

3   APPEAL, as set forth in its complaint. (<u>See</u> FAC ¶¶ 5-6.)

4   Additionally, as discussed above, the Board's rejection of the

5   latter application in light of DDI's ownership of registration Nos.

6   2925206 and 3083175 does not preclude MAM' claims here because it

7   does not dispose of MAM's arguments asserting fraudulent

8   acquisition and abandonment. <u>See</u>, <u>supra</u>, Section III(A)(I).

9   **B.   MAM's Motion for a Permanent Injunction**

10      MAM has moved for a permanent injunction against DDI in

11   relation to the latter's use of the MASS APPEAL mark. (DKT No. 23.)

12   MAM's motion is premised upon the court granting a default judgment

13   order against DDI, finding it liable for trademark infringement

14   and/or unfair competition. (<u>Id.</u> at 5-6.) MAM relies on the clerk of

15   the court having entered default against DDI on September 5, 2013.

16   (DKT No. 18.) However, on November 13, 2013, the court issued an

17   order setting aside the clerk's entry of default against DDI. (DKT

18   No. 30.) An order by this court granting default judgement is

19   therefore inappropriate. As there is no other basis for

20   establishing liability at this juncture in the litigation, the

21   court will not issue a permanent injunction.

22

23

24

25

26   ///

27   ///

28   ///

## IV.   Conclusion

For the reasons set forth above, the court DENIES DDI's Motion to Dismiss and DENIES MAM's Motion for a Permanent Injunction.

IT IS SO ORDERED.

Dated: December 12, 2013

DEAN D. PREGERSON
United States District Judge